# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**
March 5, 2020

Lyle W. Cayce
Clerk

No. 19-60668
Summary Calendar

In the Matter of:  TROY LEE ROGERS

     Debtor

SOUTHERN FINANCE L.L.C., SUCCESSOR IN INTEREST TO PIKCO
FINANCE, INCORPORATED,

     Appellee

v.

TROY LEE ROGERS,

     Appellant

Appeal from the United States District Court
for the Southern District of Mississippi
USDC 3:18-CV-213

Before WIENER, HAYNES, and COSTA, Circuit Judges.

PER CURIAM:*

    Appellant Troy Lee Rogers took out a loan from Pikco Finance, Inc., now known as Southern Finance L.L.C.  In the loan documents, Southern Finance disclosed that it paid $180.00 to Liberty Motor Club ("LMC") for a roadside

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 19-60668

assistance subscription.   LMC actually received $27.00, while Southern Finance retained a $153.00 commission fee pursuant to an agreement between Southern Finance and LMC.   This appeal concerns Southern Finance's retention of the commission without disclosing it in the loan documents.[1]

Rogers claims that Southern Finance violated the Truth in Lending Act[2] ("TILA") by overstating the amount financed[3] by the loan because Southern Finance excluded the LMC subscription cost from its finance charge.  A finance charge "includes any charge payable directly or indirectly by the consumer and imposed directly or indirectly by the creditor as an incident to or a condition of the extension of credit" but "does not include any charge of a type payable in a comparable cash transaction."   12 C.F.R. § 226.4(a).  According to Rogers, the LMC subscription cost should not have been excluded from the finance charge.

We disagree.  Southern Finance presented uncontroverted proof that an LMC membership would have cost $180.00 if Rogers had purchased it from an entity other than Southern Finance.   The membership was optional, and Rogers was advised that he could decline it without affecting his ability to obtain the loan.   He was also entitled to use "funds other than the loan proceeds"—i.e., cash—to purchase the membership.   Rogers contends that, because LMC does not sell directly to consumers and instead sells

---

[1] Procedurally, this case involved Southern Finance seeking to exempt from discharge Rogers's debt to it, and Rogers counterclaiming with the allegations discussed in this opinion. The case was decided by the district court, which granted summary judgment to Southern Finance and denied it to Rogers, as a non-core proceeding.

[2] TILA requires "a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit."  15 U.S.C. § 1601(a).

[3] The amount financed—that is, "the amount of credit of which the consumer has actual use"—is calculated by taking the principal amount of the loan, adding charges that are not part of the finance charge or principal loan amount, and subtracting charges that are part of the finance charge but will be paid by the consumer.  15 U.S.C. § 1638(a)(2)(A).

No. 19-60668

memberships through loan companies, no comparable cash transaction exists. However, Rogers cites no authority suggesting that a company must sell directly to consumers instead of through intermediaries for a sale to qualify as a comparable cash transaction. The membership cost—which was not a condition to the extension of credit and was the type of charge payable in a comparable cash transaction—did not have to be excluded from the finance charge.

Additionally, lenders must disclose the amount "paid to third persons by the creditor on the consumer's behalf," including the identity of those receiving payments. 15 U.S.C. § 1638(a)(2)(B)(iii). A consumer seeking actual damages[4] for an itemization violation must show detrimental reliance—that is, "had he been properly informed, he would have engaged in a different or less-expensive transaction." *Perrone v. Gen. Motors Acceptance Corp.*, 232 F.3d 433, 436 (5th Cir. 2000). To establish reliance, a plaintiff "must show that (1) he read the TILA disclosure statement; (2) he understood the charges being disclosed; (3) had the disclosure statement been accurate, he would have sought a lower price; and (4) he would have obtained a lower price." *Id.* at 437. Here, Rogers argues that he would not have agreed to the LMC subscription cost had he realized that Southern Finance would retain a large commission fee. However, he admits that he did not read the agreement and offered no proof of reading "some or any of the disclosures." Because Rogers did not read the documents, we affirm the district court's holding that he cannot establish reliance.

AFFIRMED.

---

[4] The district court held that statutory damages are not available for the violation claimed, and Rogers "elect[ed] to abandon his attempts to seek statutory damages" on appeal.